

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0186-24

### THE STATE OF TEXAS

### v.

### JUSTIN HEATH PETTIT, Appellee

## ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW FROM THE TWELFTH COURT OF APPEALS SMITH COUNTY

**NEWELL, J., delivered the opinion for the unanimous Court.**

### <u>OPINION</u>

Does the passenger of a vehicle stopped for a traffic violation have standing to challenge the search of the vehicle following an allegedly unreasonably prolonged detention? In this case, yes. Here, the vehicle, the driver, and Appellee, the passenger, were detained for approximately one

hour following a traffic stop to allow for law enforcement to have a K-9 unit conduct an open-air sniff. After the K-9 gave a positive alert, the vehicle was searched. Before trial, Appellee filed a motion to suppress evidence seized from the vehicle and attributed to him. Appellee had a reasonable expectation of privacy in not being subject to an unreasonably prolonged detention following the traffic stop. We hold that Appellee had standing to challenge his detention and the subsequent search of the vehicle because it was the fruit of the allegedly unreasonably prolonged detention. Thus, we reverse the judgment of the court of appeals and remand for the court of appeals to consider the merits of the trial court's order granting Appellee's motion to suppress including whether the traffic stop was unreasonably prolonged.

## Background

The underlying facts are largely uncontested. Trooper Ryan Wilkinson, a Department of Public Safety patrol officer in Smith County, initiated a traffic stop of a vehicle on a rural county road for speeding,[1] having an expired temporary tag, and an inoperative brake light. Trooper Wilkinson approached the passenger side of the vehicle and found Appellee seated in the front passenger seat. Trooper Wilkinson asked both the driver and Appellee for identification and asked the driver to exit the vehicle. The driver, later

---

[1] The vehicle was not speeding when it approached Trooper Wilkinson, but his rear radar clocked the vehicle as accelerating to 51 in a 45-mph zone.

identified as Bridgett Tobler, explained almost immediately that she did not have a driver's license.

Approximately two minutes into the stop, Trooper Wilkinson advised Tobler he would give her a warning for the expired tag, speeding, and inoperative brake light but that he had to write her a citation for driving without a valid driver's license.  Then, Trooper Wilkinson had Appellee exit the vehicle. Trooper Wilkinson noted Appellee was shaky, and Appellee advised that he was on probation for unauthorized use of a motor vehicle.  Trooper Wilkinson patted Appellee down.[2]  Between six and seven minutes into the stop, Trooper Wilkinson confirmed that both Tobler and Appellee were clear for state-wide and local warrants.  Trooper Wilkinson asked Tobler for consent to search the vehicle, which she refused.

Trooper Wilkinson returned to his vehicle for several minutes but did not begin writing the citation or warnings.  Speaking to his partner, Trooper Wilkinson admitted that he "didn't know if they had enough for a dog" but noted both Appellee and Tobler had drug history,[3] they did not know each other, Appellee was not from the area, and Appellee was nervous.  Trooper Wilkinson was looking for available K-9 units in the area, but none were available close by.  Nearly eight minutes after the refusal, Trooper Wilkinson

---

[2] Appellee advised Trooper Wilkinson that he had tools on his person but refused consent to search or remove items from his pockets.

[3] Trooper Wilkinson noted that Appellee had lied when he asked him about his criminal history after Appellee acknowledged he was on probation.

located an available K-9 unit.  Approximately fifty-six minutes after the traffic stop was initiated, the K-9 unit arrived.   The K-9 conducted an open-air search, he alerted, and the officers subsequently searched the vehicle.  Inside of the vehicle, Trooper Wilkinson found prescription medication, syringes, and a sawed-off shotgun.  Appellee was charged with possession of a prohibited weapon.  Prior to trial, Appellee filed a motion to suppress the evidence seized from the search of the vehicle.

The trial court held a hearing on Appellee's motion.  After hearing testimony from Trooper Wilkinson and argument from both parties, the trial court took the matter under advisement.  The trial court ultimately granted Appellee's motion to suppress and entered written findings of fact and conclusions of law.  The trial court concluded that Trooper Wilkinson lacked reasonable suspicion to detain Appellee.  The trial court concluded that the length of detention exceeded constitutional boundaries, pursuant to the Supreme Court's holding in *Rodriguez v. United States*,[4] because the traffic stop was prolonged beyond its original purpose to bring a drug-sniffing dog to the scene.  Thus, the trial court held the evidence obtained as a result of the seizure and prolonged detention must be suppressed.  The State appealed.

**Appeal**

On appeal, the State argued that the trial court erred in suppressing the evidence.  The State argued at the outset that Appellee, as a passenger, failed

---

[4] *Rodriguez v. United States*, 575 U.S. 348 (2015).

to establish standing to contest the search of a vehicle he did not own. Appellee argued that he had a reasonable expectation of privacy in not being detained beyond the time necessary for law enforcement to complete their investigation for the traffic stop and any further detention lacked reasonable suspicion.

Considering whether Appellee had standing to assert a violation of his Fourth Amendment rights, the court of appeals agreed with the State.[5] The court of appeals looked to this Court's determination in *Lewis v. State*, to conclude that the relevant inquiry as to standing was "whether the search of the vehicle 'was come at by exploitation of [Appellee's] continued detention and removal from the vehicle."[6] The court of appeals concluded Appellee lacked standing to challenge the search or the admission of evidence obtained as a result of the search because Trooper Wilkinson's ability to search would not have been affected by Appellee's inability to leave.[7] The court of appeals thus reversed the trial court's order granting Appellee's motion to suppress.[8]

## Discretionary Review

Appellee petitioned this Court for discretionary review. We granted Appellee's petition on the following ground:

---

[5] *State v. Pettit*, No. 12-23-00185-CR, 2024 WL 482254, at * 3 (Tex. App. – Tyler, Feb. 7, 2024, pet. granted) (not designated for publication).

[6] *Id.* (citing *Lewis v. State*, 664 S.W.2d 345, 348 (Tex. Crim. App. 1984)).

[7] *Id.* ("Accordingly, we hold that the trial court abused its discretion in granting Appellee's motion to suppress.").

[8] *Id.*

> [Appellee], as a passenger in the vehicle, had standing to contest his unconstitutional seizure. The twelfth court of appeals did not follow this Court's holding in *Kothe v.* State, 152 S.W.3d 54 (Tex. Crim. App. 2004), fundamentally misapplied the "fruit of the poisonous tree" doctrine, and erred by holding that [Appellee] lacked standing.

Appellee maintains that he had a reasonable expectation of privacy in not being detained beyond the time necessary for the traffic stop. He argues the prolonged detention was without articulable suspicion of a crime and that the resulting search of the vehicle was made by exploiting the illegality of the prolonged detention. He also argues that the court of appeals failed to follow this Court's holding in *Kothe* that one has a reasonable expectation of privacy in not being detained beyond the time necessary for the traffic stop investigation.[9] Appellee argues that the trial court properly suppressed the evidence because he was detained without reasonable suspicion long after the reason for the traffic stop had ended and the search was a fruit of the poisonous tree of that prolonged detention.

The State argues that the search was not the result of Appellee's continued detention and removal from the vehicle and, therefore, Appellee has no standing. According to the State, because Appellee did not have an expectation of privacy in the vehicle or its contents, the court of appeals correctly followed *Lewis* to find Appellee lacked standing. Further, the State distinguishes *Kothe* by arguing that in that case standing was based on the

---

[9] *Kothe*, 152 S.W.3d at 60.

defendant's personal right to privacy in the vehicle he was driving; and the fruit of the poisonous tree doctrine extended standing to the search of the vehicle's passenger.

In this case, the court of appeals held that Appellee lacked standing to challenge the search at issue.[10]  As we will explain in further detail below, we hold that Appellee had standing to challenge the search of the vehicle.  The lower court did not consider the question of reasonable suspicion, so we remand to the court of appeals to address whether there was reasonable suspicion for the prolonged detention.

## Standard of Review

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review that gives almost total deference to the trial court's determination of historical facts that the record supports and considers *de novo* the application of the law to the facts.[11]  We defer to the trial court's findings unless they are unsupported by the record and view the evidence in the light most favorable to the trial court's ruling.[12]  The trial court's ruling on a motion to suppress will be reversed only if it is arbitrary, unreasonable, or outside the zone of reasonable disagreement.[13]

---

[10] *Pettit*, 2024 WL 482254, at * 3.

[11] *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018).

[12] *State v. Johnson*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011).

[13] *Cortez*, 548 S.W.3d at 203*.*

## Standing

The rights, protected by the United States and Texas Constitutions,[14] to be free from unreasonable search and seizures, are personal.[15]  A person seeking to challenge the legality of a search or seizure through a motion to suppress evidence must first establish standing to complain about the search or seizure by showing that there was a violation of *his* rather than another person's rights.[16]  In other words, he must be the "victim" of the unreasonable search or seizure.[17]  A person has standing to challenge a search or seizure if (1) he has a subjective expectation of privacy in the place or object searched, and (2) society recognizes that expectation as reasonable or legitimate.[18]  A defendant has no standing to complain about an invasion of someone else's personal rights.[19]  Instead, he must show "a legitimate expectation of privacy

---

[14] U.S. CONST. Amend. IV ("[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violation"); Tex. Const. Art. 1, Sec. 9 ("[t]he people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures and searches").

[15] *Alderman v. United States*, 394 U.S. 165, 174 (1969); *Matthews v. State*, 431 S.W.3d 596, 606 (Tex. Crim. App. 2014).

[16] *Matthews*, 431 S.W.3d at 606.

[17] *Kothe*, 152 S.W.3d at 59 ("Proof of 'a reasonable expectation of privacy' is at the forefront of all Fourth Amendment claims. Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded. He must prove he was a 'victim' of the unlawful search or seizure.").

[18] *State v. Granville*, 423 S.W.3d 399, 405 (Tex. Crim. App. 2014).

[19] *Kothe*, 152 S.W.3d at 59.

in the place invaded."[20] "Absent a legitimate expectation of privacy, a defendant lacks standing to raise [challenge the constitutionality of a search] and we may not consider the substance of his complaint."[21] Standing is a legal issue that we review *de novo*.[22]

## Analysis

"The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver 'even though the purpose of the stop is limited and the resulting detention is quite brief.'"[23] In *Brendlin v. California*, the United States Supreme Court held that a passenger is likewise seized during a traffic stop reasoning that "a traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver."[24] The Supreme Court recognized that a traffic stop "normally amounts to intrusion on 'privacy and personal security' [and] does not normally . . . distinguish between passenger and driver."[25] Rather, a traffic stop seizes everyone in the vehicle not just the driver.[26] The Court recognized, as anyone who has ever been involved in a

---

[20] *King v. State*, 670 S.W.3d 653, 656 (Tex. Crim. App. 2023) (citing *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996)).

[21] *Id.* (citing *Kothe*, 152 S.W.2d at 59).

[22] *Id.*

[23] *Brendlin v. California*, 551 U.S. 249, 255 (2007).

[24] *Id.* at 257.

[25] *Id.*

[26] *Id.*

traffic stop would, that a passenger will reasonably expect that any "attempt to leave the scene would be so obviously likely to prompt an objection from the officer that no passenger would feel free to leave in the first place."[27] The State concedes Appellee has standing to challenge the stop of the vehicle but contends that he did not have standing to challenge the constitutionality of the search. But if a passenger can challenge a traffic stop, it follows that he can challenge his continued detention thereafter.[28]

We recognized in *Kothe v. State* that both drivers and passengers have a reasonable expectation of privacy in not being detained pursuant to a traffic stop for longer than is necessary for the officer to complete his investigation.[29] Kothe, the driver, was the subject of a traffic stop following a call about a possibly intoxicated driver.[30]  After determining that he was not intoxicated and had no warrants, the investigating officer received notice that he may be in possession of a stolen item.  After searching Kothe's vehicle with consent, and finding drug paraphernalia, the officer questioned the vehicle's passenger

---

[27] *Id.* at 257.

[28] *See id.* at 259 (citing 6 W. LaFave, Search and Seizure § 11.3(e), pp. 194, 195, and n. 277 (4th ed. 2004 and Supp. 2007).

[29] *Kothe*, 152 S.W.3d. at 61 (recognizing both the driver and the passenger had a reasonable expectation of privacy in the right to be free from an illegal detention). This Court also recognized Professor LaFave's explanation that "[i]f either the stopping of the car of the passenger's removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit." *Id.* (citing 5 Wayne R. LaFave, Search and Seizures § 11.3(3), at 173-74 (3d ed. 1996)).

[30] *Id.* at 58.

who said she had two bags of heroin on her person, which Kothe asked her to hold. He was arrested and charged with possession of a controlled substance and drug paraphernalia.

Kothe filed a motion to suppress the heroin seized arguing the officer unreasonably prolonged his detention and that the search of the passenger was made by exploiting that initial illegality.[31] In other words, he argued that the search of the passenger was the fruit of the poisonous tree of the allegedly unduly prolonged stop.[32] We held that if the officer's conduct in prolonging the stop was unreasonable under the Fourth Amendment, the driver would have standing to complain about the subsequent search of the passenger because that search constituted an exploitation of the illegal detention.[33]

We agree with Appellee that *Kothe* controls. Here, the search of the vehicle was the fruit of the poisonous tree of the unreasonably prolonged detention. Both the driver and passenger had a reasonable expectation in being free from the intrusion of an unreasonably prolonged detention following the traffic stop. Trooper Wilkinson prolonged his detention of Appellee and Tobler to have a K-9 unit conduct an open-air sniff and, upon the dog's alert, conducted a search of the vehicle. Absent reasonable suspicion, an officer

---

[31] *Id.* at 60.

[32] *Id.*

[33] *Id.* at 57 ("We hold that, because [the driver] had a reasonable expectation of privacy in not being subjected to an unduly prolonged detention, he has standing to challenge the seizure of evidence obtained by exploiting that detention.").

may not extend a traffic stop in order to conduct a K-9 dog sniff.[34]  It follows that if Appellee had standing to contest the legality of the stop based on the intrusion into his reasonable expectation of privacy during a traffic stop, he has standing to challenge his prolonged detention following that stop.

The question then becomes whether standing extends to the search of the vehicle in this case, which turns on whether the search of the vehicle was the result of the exploitation of Appellee's continued detention.  The answer to that question is yes.  As we recognized in *Kothe*, if a search constituted an exploitation of an illegal detention that search would be a "fruit of the poisonous tree."[35]  We recognized the same principle in *Lewis*, a much earlier case, stating "*if* the search resulted from an infringement (such as an illegal detention) of the *passenger*'s Fourth Amendment rights," a passenger can challenge the search of a vehicle.[36]  But the court of appeals relied on *Lewis* to conclude that Appellee lacked standing.

In *Lewis*, a vehicle was stopped for the failure to have a license plate light. The investigating officer issued the driver a citation and determined that neither the driver nor either of the two passengers had outstanding warrants. But the officer ordered the occupants out of the car, frisked the driver and front passenger, and searched the vehicle.  The search revealed marijuana

---

[34] *Rodriguez*, 575 U.S. at 356-57.

[35] *Kothe*, 152 S.W.3d at 62.

[36] *Lewis*, 664 S.W.2d at 348 (emphasis in the original).

under the front passenger seat and what appeared to be marijuana seeds on the backseat. Lewis, the backseat passenger, was charged with possession of marijuana. In a motion to suppress the evidence, Lewis challenged the search arguing that it was the result of an illegal detention. The trial court declined to suppress the evidence.

On appeal, this Court considered the relevant question to be, "whether the search of the vehicle was come at by the exploitation of [Lewis's] continued detention and removal from the vehicle."[37] The Court held that Lewis's removal from the vehicle was "not even a 'but-for' cause of the subsequent search" because "[a] fair reading of the record indicate[d] that [the officer] could have performed his search without removing the car's occupants, but that he did remove them for the sake of his convenience and safety."[38] We explained that Lewis's "presence was irrelevant to the officer's decision to search. Put another way, [the officer] could have let [Lewis] leave without hampering his ability to search the car. Thus, in no way was *her* detention necessary to perform the search."[39] We held that the exploitation of the passenger's continued detention did not give rise to the search.[40]

---

[37] *Id.* at 348.

[38] *Id.* at 348-49.

[39] *Id.* at 349.

[40] *Id.*

Citing *Lewis*, the court of appeals reasoned Appellee lacked standing because "had he been allowed to leave, the DPS Troopers' ability to search the vehicle would not have been affected."[41] But the insertion of this theoretical consideration into the question of standing is unsupported and unnecessary to the resolution of the case. First, it is at odds with the Supreme Court's recognition in *Brendlin* that a traffic stop "necessarily curtails the travel a passenger has chosen just as much as it halts the driver" and "no passenger would feel free to leave in the first place."[42] If a passenger has standing to challenge a traffic stop because the stop "seizes everyone in the vehicle, not just the driver," it follows that the passenger has standing to challenge the prolonged nature of the stop because, the passenger is in fact detained and not free to leave.[43] As both *Lewis* and *Kothe* recognized, if a search constituted an exploitation of an illegal detention, standing extends to the search.[44] It would be inappropriate to deny relief on the basis that a passenger lacks standing simply because the driver's rights may have simultaneously been injured.[45] To the extent that *Lewis* imposed a new

---

[41] *Pettit*, 2024 WL 482254, at *3.

[42] *Brendlin*, 551 U.S. at 257 (holding that a passenger was seized in a traffic stop and thus entitled to challenge the stop).

[43] *Id.* at 255-57.

[44] *Kothe*, 152 S.W.3d at 62 (a "search is 'fruit of the poisonous tree' if it constituted an exploitation of the illegal detention"); *Lewis*, 664 S.W.2d at 348 ("the relevant question becomes whether the search of the [the driver's] vehicle was come at by exploitation of [the passenger's] continued detention").

[45] *Lewis*, 664 S.W.2d at 355 (Miller, J., dissenting).

theoretical test, we now expressly disavow that language.[46]  If a passenger is detained during a traffic stop that he alleges was unreasonably prolonged, he has standing to challenge the prolonged nature of that detention as well as any fruits that flowed from that detention.

Here, the search occurred precisely because the Trooper detained Appellee and the driver for nearly an hour to await a K-9 unit.  Both Appellee and the driver were subject to the traffic stop and its attendant detention, which Appellee alleges was unreasonably prolonged in order to call for a K-9 unit.  The search occurred because the Trooper detained Appellee to call for the K-9 unit, which gave an alert authorizing the search.  The search was the fruit of the detention.  Also, the record reveals that Appellee was anything but irrelevant to the Trooper's decision to prolong the detention.  Trooper Wilkinson testified at the suppression hearing that his decision to prolong the traffic stop was based on Appellee's nervousness; that Appellee and the driver admitted to drug use; that Appellee and the driver offered unsolicited information; and that Appellee lied about his criminal history.[47]  Unlike the defendant in *Lewis*, Appellee's presence was not irrelevant to the detention or the search that resulted from that detention.  Because the facts gleaned during

---

[46] *See Febus v. State*, 542 S.W.3d 568, 576 (Tex. Crim. App. 2018) ("If a prior decision was poorly reasoned or unworkable, we do not achieve the goals sought through reliance upon *stare decisis* by continuing to follow that precent.").

[47] The determination of reasonable suspicion is based on objective standard, but the Trooper's testimony makes clear that Appellee's presence was not irrelevant to his determination to prolong the traffic stop for the dog-sniff, which preceded the search.

the prolonged detention gave rise to the justification for the search, Appellee has standing to challenge the search as a product of the prolonged detention.

## Conclusion

Having determined Appellee had standing to challenge the search, we remand to the court of appeals for it to consider whether the prolonged detention was reasonable.


Delivered: May 28, 2025

Publish